UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH LEWIS,

       Plaintiff,                                Hon. Ellen S. Carmody

v.

                                            Case No. 1:14-cv-621

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. On December 16, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #11).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 45 years of age on his alleged disability onset date. (Tr. 174). He successfully completed high school and worked previously as a machine operator, factory laborer, and production press operator. (Tr. 23). Plaintiff applied for benefits on April 1, 2011, alleging that he had been disabled since October 15, 2007, due to neurofibromatosis, atrial fibrulation, arthritis, and depression. (Tr. 174-82, 206). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 64-173). On October 10, 2012, Plaintiff appeared before ALJ Laurel Greene with testimony being offered by Plaintiff and a vocational expert. (Tr. 32-54). In a written decision dated October 19, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 13-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-7). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2011. (Tr. 16). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v.*

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from neurofibromatosis, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-19). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, he can sit and stand/walk for six hours each; and (3) he must be able to alternate at will between sitting and standing. (Tr. 19).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 9,870 jobs in the state of Michigan, and approximately 381,000 jobs nationwide, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 46-51). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**I.         The ALJ Properly Assessed Dr. Eisenga's Opinion**

Plaintiff argues that he is entitled to relief because the ALJ failed to articulate good reasons for discounting the opinions expressed by his treating physician, Dr. Bernard Eisenga.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

6

235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so.  *Gayheart*, 710 F.3d at 376.  Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)).  Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment.  *Gayheart*, 710 F.3d at 376-77.

On June 20, 2011, Plaintiff met for the first time with Dr. Eisenga of the Helen DeVos Childrens' Hospital Neurofibromatosis Clinic.  (Tr. 520).  Plaintiff reported that he was experiencing "back pain and buttock pain."  (Tr. 520).  The results of a physical examination, including an assessment of Plaintiff's neurologic functioning, were unremarkable.  (Tr. 520-21).

7

Plaintiff was diagnosed with neurofibromatosis[2] and prescribed Neurontin. (Tr. 521).

Plaintiff next met with Dr. Eisenga on July 15, 2011. (Tr. 525-27). The doctor observed that Plaintiff had "multiple areas" of neurofibromas and small plexiforms over both buttocks. (Tr. 526). The doctor noted that these areas were "soft and mildly tender." (Tr. 526). The doctor also observed two "small" neurofibromas on Plaintiff's head and a "larger" plexiform on Plaintiff's left thigh. (Tr. 526). The results of a physical examination, including an assessment of Plaintiff's neurologic functioning, were unremarkable. (Tr. 526).

Dr. Eisenga reported that "many" of Plaintiff's plexiforms and neurofibromas were "painful." (Tr. 526). The doctor "anticipate[d] worsening of [Plaintiff's] disease" and also noted that "[f]urther pain control is often difficult to achieve." (Tr. 526). The doctor further stated that, "I believe that [Plaintiff] will have significant limitations in his ability to work and may be a candidate for disability." (Tr. 526). The ALJ afforded "little weight" to these conclusions. (Tr. 21). Plaintiff argues that he is entitled to relief because the ALJ failed to afford controlling weight to these particular opinions.

Plaintiff's argument fails for several reasons. First, the "opinions" in question are little more than vague observations which are not inconsistent with the ALJ's findings. The ALJ recognized that Plaintiff experiences significant vocational limitations and crafted an RFC to account for such. Second, as the ALJ correctly noted, the doctor's opinion that Plaintiff's condition *might* deteriorate at some unknown point in the future is an insufficient basis for a finding of disability.

---

[2] Neurofibromatosis is "a genetic disorder that causes tumors to form on nerve tissue." *See* Neurofibromatosis, available at http://www.mayoclinic.org/diseases-conditions/neurofibromatosis/home/ovc-20167893 (last visited on February 23, 2016). While the symptoms of neurofibromatosis "are often mild," complications of the disease can produce "severe pain." *Id.*

As the ALJ also noted, the medical evidence, including the results of Dr. Eisenga's own examinations, do not support the opinions in question. As noted above, the results of examinations performed by Dr. Eisenga were unremarkable. This is consistent with the other evidence of record. Treatment notes dated September 7, 2010, indicate that Plaintiff was not precluded from working, but instead needed to participate in an exercise program. (Tr. 352-53). A December 14, 2010 examination revealed no neurological abnormalities. (Tr. 481-82).

A January 11, 2011 EMG examination of Plaintiff's lower extremities was "entirely normal." (Tr. 479). The results of a January 27, 2011 examination were unremarkable. (Tr. 512-13). The results of an April 7, 2011 examination were likewise unremarkable. (Tr. 507). An MRI of Plaintiff's spine, performed on or about July 15, 2011, revealed no evidence of abnormality. (Tr. 526). Following an August 15, 2011 examination, Dr. Christina Pareigis concluded that Plaintiff could perform work consistent with the ALJ's RFC. (Tr. 529-31). Moreover, Dr. Keusel concluded that Plaintiff's reported limitations were inconsistent with the results of physical examinations and, moreover, the doctor suggested that Plaintiff was a malingerer. (Tr. 460). As for Plaintiff's ability to perform in a "competitive work situation," Dr. Keusel reported that Plaintiff can perform at a level consistent with the ALJ's RFC determination. (Tr. 461-62). In sum, the ALJ's decision to discount Dr. Eisenga's opinion is supported by substantial evidence.

**II.        Plaintiff's Credibility**

At the administrative hearing, Plaintiff was asked why he was unable to work. (Tr. 39-40). Plaintiff responded, "the main thing is my neurofibromatosis," but that he also "just feel[s] depressed." (Tr. 40). Plaintiff contends that the ALJ improperly discounted his subjective

9

allegations that he suffers "pain related mental limitations."

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801

(citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

As the ALJ recognized, the medical evidence does not support Plaintiff's argument that he is limited to an extent greater than reflected by his RFC. This conclusion is supported by the evidence discussed above. The ALJ also noted Plaintiff's "limited work history with low annual earnings." (Tr. 22). In this respect the ALJ observed that if Plaintiff were awarded benefits, "it is likely [Plaintiff's] monthly income would be greater than what he has received in the past while being gainfully employed." (Tr. 22). As the ALJ recognized, this is a relevant factor when assessing Plaintiff's credibility. *See, e.g., Matula v. Commissioner of Social Security*, 2013 WL 6713829 at *7 (E.D. Mich., Dec. 20, 2013) (it is "appropriate for ALJ to consider poor work history when evaluating credibility"). In sum, the ALJ's determination to discount Plaintiff's credibility is supported by substantial evidence. Accordingly, this argument is rejected.

**III.      The ALJ Properly Assessed Dr. Pareigis' Opinion**

As noted above, Dr. Pareigis examined Plaintiff on August 15, 2011. (Tr. 529-31). The doctor concluded that Plaintiff could perform work subject to a sit/stand option and lifting 20 pounds occasionally and 10 pounds frequently, limitations which are consistent with the ALJ's RFC determination. The ALJ afforded "great weight" to Dr. Pareigis' opinion. (Tr. 22). Plaintiff takes issue with this determination. The Court discerns no error in the ALJ's assessment of Dr. Pareigis' opinion.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. The Court further finds that appeal of this matter would not be taken in good faith. *See Smith v. Commissioner of Social Security*, 1999 WL 1336109 at *2 (6th Cir., Dec. 20, 1999); *Leal v. Commissioner of Social Security*, 2015 WL 731311 at *2 (N.D. Ohio, Feb. 19, 2015); 28 U.S.C. § 1915(a)(3). A judgment consistent with this opinion will enter.

Date: March 14, 2016                                     /s/ Ellen S. Carmody
                                                                          ELLEN S. CARMODY
                                                                          United States Magistrate Judge